FILED
2007 Apr-10 AM 10:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ALABAMA

### EASTERN DIVISION

99 JUN 28 PM 3: 01

U.S. DISTRICT COURT
N.D. OF ALABAMA

|  |  |
|---|---|
| STATE OF ALABAMA, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES ARMY CORPS OF ENGINEERS; COLONEL MICHAEL F. THUSS, in his capacity as District Engineer, Mobile District, United States Army Corps of Engineers; MAJOR GENERAL ROBERT M. BUNKER, in his capacity as Division Engineer, South Atlantic Division, United States Army Corps of Engineers; and LT. GENERAL HENRY J. HATCH, in his capacity as the Chief of Engineers, United States Army Corps of Engineers. | CIVIL ACTION <br><br> NO. <br><br> CV-90-H-01331-E |

## COMPLAINT FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTION

### PARTIES

1.　Plaintiff the State of Alabama ("Plaintiff") brings this action in its own capacity based upon irreparable harm to its proprietary interests as a proximate result of the acts and omissions alleged herein and in its representative capacity as <u>parens patriae</u> for the citizens

of the State of Alabama based upon irreparable harm to the general welfare of the State
and its citizens at large as a proximate result of the acts and omissions alleged herein.

2.    Defendant the United States Army Corps of Engineers (the "Corps") is one of the
basic branches of the United States Army and is responsible for maintaining federally owned
and operated reservoirs pursuant to, inter alia, the Water Supply Act of 1958, 43 U.S.C. §
390b.  The Corps is subject to the requirements of the National Environmental Policy Act
of 1969 ("NEPA"), 42 U.S.C. §§ 4321 et seq., and pursuant to the provisions of NEPA, the
Corps must determine the extent of environmental review necessary for a "Major Federal
Action" before authorizing any action which may significantly affect the quality of the human
environment.

3.    Defendant Colonel Michael F. Thuss ("Colonel Thuss") is the District Engineer for
the Mobile District of the Corps.  Plaintiff is informed and believes, and upon that basis
alleges, that Colonel Thuss, or his predecessors, has approved and/or has authorized the
acts and omissions alleged herein in his capacity as the District Engineer for the Mobile
District of the Corps.  Plaintiff is further informed and believes that Colonel Thuss' acts and
omissions described herein arbitrarily and capriciously violated mandatory duties to the
State of Alabama and its citizens.

4.    Defendant Major General Robert M. Bunker ("General Bunker") is the Division
Engineer for the South Atlantic Division of the Corps.  Plaintiff is informed and believes,
and upon that basis alleges, that General Bunker has approved and/or has authorized the
acts and omissions alleged herein in his capacity as the Division Engineer for the South
Atlantic Division of the Corps.  Plaintiff is further informed and believes that General

2

Bunker's acts and omissions described herein arbitrarily and capriciously violated mandatory duties to the State of Alabama and its citizens.

5.      Defendant Lt. General Henry J. Hatch ("General Hatch") is the Chief of Engineers for the Corps. Plaintiff is informed and believes, and upon that basis alleges, that General Hatch has approved and/or has authorized the actions alleged herein in his capacity as the Chief of Engineers of the Corps. Plaintiff is further informed and believes that General Hatch's acts and omissions described herein arbitrarily and capriciously violated mandatory duties to the State of Alabama and its citizens.

## JURISDICTION

6.      This Court has exclusive jurisdiction of this action pursuant to 28 U.S.C. § 1331; 5 U.S.C. §§ 701 et seq.; 28 U.S.C. §§ 2201 et seq.; 42 U.S.C. §§ 4321 et seq. and all regulations promulgated by the Council on Environmental Quality and the Corps thereunder; and 43 U.S.C. § 390b.

## VENUE

7.      Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391(e) because this is a civil action in which each defendant is either an officer of the United States or an agency of the United States and the causes of action which are the subject of this action have arisen in this District in that the irreparable harm which will result in the event the relief prayed for in this Complaint is not granted will occur in this District.

## FACTUAL ALLEGATIONS

8.      The Corps has a duty to manage and maintain federal reservoirs in accordance with, inter alia, the Water Supply Act of 1958 (the "Water Supply Act"), 43 U.S.C. § 390b.

3

Plaintiff is informed and believes, and upon that basis alleges, that Bufford Dam, Sidney Lanier Lake, Georgia ("Lake Lanier"), Carters Lake, Georgia ("Carters Lake"), and Lake Allatoona, Georgia ("Lake Allatoona") are owned, operated, and managed by the Corps pursuant to the Flood Control Act of 1941, 33 U.S.C. § 701c, the Rivers and Harbor Act of 1945, 33 U.S.C. § 603a, and the Water Supply Act and certain regulations promulgated by the Corps.  Plaintiff is further informed and believes, and upon that basis alleges, that construction of Lake Allatoona was authorized pursuant to Public Law 77 - 228, adopted by the United States Congress on or about August 18, 1941, and that construction of Lake Lanier and Carters Lake was authorized pursuant to Public Law 79 - 14, adopted by the United States Congress on or about March 2, 1945. The primary, congressionally-authorized project purposes of these reservoirs are flood control, power production, and low flow augmentation for navigation. As the owner of each of these federal projects, the Corps has the responsibility, obligation, and duty to develop and implement a "Water Control Plan" and to operate and maintain Lake Lanier, Carters Lake, and Lake Allatoona for the benefit of all persons within the river basins downstream from these reservoirs, including the citizens of the State of Alabama. See 33 C.F.R. § 222.7(f)(9).

9.      Releases from Lake Lanier flow downstream into the Apalachicola-Chattahoochee-Flint River Basin (the "ACF Basin"). This Basin includes numerous counties within the State of Alabama and represents a vital natural resource for these counties as well as the State of Alabama and its citizens as a whole. These counties and their citizens depend and rely upon the Corps' neutral and objective management of Lake Lanier and other federally

4

owned reservoirs in the ACF Basin to maintain the environmental and economic qualities and resources of this Basin.

10.    Releases from Carters Lake and Lake Allatoona flow downstream into the Coosa-Alabama River Basin (the "CA Basin"). This Basin includes numerous counties within the State of Alabama and represents a vital natural resource for these counties as well as the State of Alabama and its citizens as a whole. These counties and their citizens depend and rely upon the Corps' neutral and objective management of Carters Lake, Lake Allatoona, and other federally owned reservoirs in the CA Basin to maintain the environmental and economic qualities and resources of this Basin.

11.    Plaintiff is informed and believes, and upon that basis alleges, that in approximately 1986, the Corps entered into one or more contracts with the Atlanta Regional Commission (the "Commission") and the cities of Gainesville, Georgia; Bufford, Georgia; and Cumming, Georgia, as well as the County of Gwinnett, Georgia, to permit the withdrawal of water directly from Lake Lanier and downstream from Lake Lanier. Plaintiff is further informed and believes, and upon that basis alleges, that this contract with the Commission permitted water to be extracted from Lake Lanier at an average rate of 327,000,000 gallons per day and at the peak rate of 377,000,000 gallons per day. Plaintiff received no notice and no opportunity to comment upon the potential environmental impacts which these contracts may have had upon the ACF Basin. Plaintiff is further informed and believes, and upon that basis alleges, that, at the present time, the Corps has not entered into any contracts for the withdrawal of water from Carters Lake. Plaintiff is further informed and believes, and upon that basis alleges, that there are two contracts for water supply storage at Lake

5

Allatoona. Plaintiff received no notice and no opportunity to comment upon the potential environmental impacts which these contracts may have had upon the CA Basin.

12.     Plaintiff is informed and believes, and upon that basis alleges, that during the drought conditions in the southeastern United States during 1986 through 1988, the flow of water in the ACF and CA Basins was diminished severely, resulting in, among other things, the violation of water quality standards at West Point Dam and Reservoir in Troup County, Georgia. Plaintiff is further informed and believes, and upon that basis alleges, that had the flow of water in these Basins been reduced further, industries and businesses which are located within the State of Alabama and which depend on the flow and quality of water to operate would have been forced to cease operations, causing the loss of employment for numerous citizens of the State of Alabama as well as a decrease in Plaintiff's tax base and revenue. Plaintiff is informed and believes, and upon that basis alleges, that the adverse impacts on the ACF and CA Basins were actually and proximately caused by the withdrawal of water from Lake Lanier pursuant to the contracts between the Corps and the Commission and others and other activities of the Corps in operating and maintaining Lake Lanier, Carters Lake, Lake Allatoona, and other federally owned reservoirs in such a manner so as to benefit the State of Georgia at the expense of the State of Alabama and its citizens. By doing so, the Corps violated mandatory duties to the State of Alabama and its citizens as well as other downstream users within the ACF and CA Basins.

13.     On or about February 10, 1989, the State of Alabama established the Alabama Water Resources Study Commission (the "AWRSC") to address, inter alia, the water needs of the State of Alabama in the ACF, CA Basins and other basins, the potential environmental

6

impacts of increased water use within the State of Alabama, and the development of policies for the appropriate and beneficial use of water resources within the State of Alabama. The AWRSC is in the process of developing a work plan to govern a study of future water needs and other water resource policies within the State of Alabama.

14.     On or about October 10, 1989, the State of Alabama received a copy of executive summaries from "Water Supply Reallocation Reports" ("Reallocation Reports") and "Environmental Assessments," notifying the State of Alabama that the Corps was in the process of reviewing the impacts of reallocating water from Carters Lake and Lake Allatoona for use as water supply for Chatsworth, Georgia and the Dalton-Chatsworth area and Cartersville, Georgia and the Cobb County - Marietta Water Authority, respectively. On November 1, 1989, a public meeting was held in Montgomery, Alabama to discuss the Corps' proposal. Representatives of Plaintiff attended this meeting and raised objections to the proposed reallocations on the ground that insufficient information was available to assess the economic and environmental impacts of the proposed action on downstream users in the CA Basin, in general, and the citizens of the State of Alabama, in particular. Plaintiff also submitted detailed written comments to the Corps in opposition to the proposed reallocations.

15.     On or about April 23, 1990, a draft Reallocation Report and a draft Environmental Assessment for Carters Lake were provided for public comment and review. The Corps provided two weeks, until May 7, 1990, for interested persons to submit comments to these drafts. No public meetings were held to address concerns raised during the public comment period. Despite the submission of numerous and detailed written comments by Plaintiff, and

7

other interested persons, the Corps submitted the final Reallocation Report and final Environmental Assessment for Carters Lake to General Bunker of the South Atlantic Division of the Corps on or about May 25, 1990. Plaintiff is informed and believes, and upon that basis alleges, that General Bunker, without considering the comments submitted by Plaintiff, and other interested persons, in opposition to the proposed reallocation, has submitted the final Reallocation Report and final Environmental Assessment to General Hatch for approval. Plaintiff is further informed and believes, and upon that basis alleges, that General Hatch's review of the action by the Mobile District and the South Atlantic Division of the Corps will not consider the objections raised by Plaintiff to this proposal and that any further attempt by Plaintiff to oppose the reallocation of water from Carters Lake within the Corps would be futile. Accordingly, the Corps' actions with respect to Carters Lake constitute "final action" under the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq.

16. Plaintiff is informed and believes, and upon that basis alleges, that on or about July 2, 1990, a draft Reallocation Report and draft Environmental Assessment for Lake Allatoona will be issued by the Corps for public comment and review without the benefit of a basin-wide study assessing the potential impacts on the entire CA Basin as required by NEPA. Plaintiff is further informed and believes, and upon that basis alleges, that notwithstanding any public review period provided by the Corps, the Corps will submit the final Reallocation Report and final Environmental Assessment for Lake Allatoona to General Bunker of the South Atlantic Division without considering the objections which have been raised, and which will continue to be raised, by Plaintiff and others in opposition

8

to this proposed action. Plaintiff is further informed and believes, and upon that basis alleges, that General Bunker will submit the final Reallocation Report and final Environmental Assessment to General Hatch for approval without considering Plaintiff's objections. Plaintiff is further informed and believes, and upon that basis alleges, that General Hatch's review of the action by the Mobile District and the South Atlantic Division of the Corps will not consider the objections raised to this proposal by Plaintiff and that any further attempt to oppose the reallocation of water from Lake Allatoona by Plaintiff within the Corps would be futile. Accordingly, the Corps' actions with respect to Lake Allatoona constitute "final action" under the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq.

17.     On or about October 31, 1989, the Corps released a draft Post Authorization Change ("PAC") Notification Report, along with a draft Environmental Assessment, proposing an increase of 85,000,000 gallons of water per day in the rate of withdrawal from Lake Lanier by the Commission and/or the release for withdrawal downstream from Lake Lanier by the Commission. Because this change would seriously change the purposes for which the project was authorized, Congressional approval of this increase is required under the Water Supply Act. 43 U.S.C. § 390b(d). Plaintiff is informed and believes, and upon that basis alleges, that, despite the failure of the Corps to issue a final PAC Notification Report and final Environmental Assessment, the Corps has submitted interim water supply contracts to the Cities of Cumming and Gainesville, Georgia and to the Commission for execution. These contracts authorize the withdrawal of water from Lake Lanier before the Corps finalizes the PAC Notification Report and the Environmental Assessment and obtains the necessary Congressional approval. Because the Corps intends to permit withdrawals from Lake Lanier

9

without the necessary Congressional approval, the Corps' actions with respect to Lake Lanier constitute "final action" under the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq.

18.     On or about November 21, 1989, Congressman Tom Bevill, Chairman of the United States House of Representatives Subcommittee on Energy and Water Development and duly elected representative of Plaintiff, requested that the Corps perform an in-depth study of the economic and environmental impacts on the ACF and CA Basins associated with the proposed reallocations and additional withdrawals of water from Lake Lanier, Carters Lake, and Lake Allatoona. On or about February 23, 1990, the Corps responded to Congressman Bevill's request by submitting a "Conceptual Plan - Comprehensive Studies For The Alabama-Coosa and Apalachicola-Chattahoochee-Flint River Basins" (the "Comprehensive Studies Plan"). Under the Comprehensive Studies Plan, the Corps proposed a two phased approach. In the first phase, reallocation of water from Lake Lanier, Carters Lake, and Lake Allatoona would take place immediately to satisfy alleged water supply needs within the State of Georgia. In the second phase, a comprehensive management plan to address the long-term water resource needs in the two basins would be prepared. Plaintiff is informed and believes, and upon that basis alleges, that the long-term aspect of the Comprehensive Studies Plan will include an assessment of the interrelationship between the ACF and CA Basins, as well as the cumulative impacts of water reallocation on the environment and other resources of these Basins.

19.     Plaintiff is informed and believes, and upon that basis alleges, that the results of the Comprehensive Studies Plan will show that significant, irreparable, and irreversible harm

10

to the environment and resources of the State of Alabama will occur as a result of the withdrawal of water from Carters Lake and Lake Allatoona and the additional withdrawal of water from Lake Lanier. Plaintiff is further informed and believes, and upon that basis alleges, that once water is permitted to be withdrawn from Lake Lanier, Carters Lake, and Lake Allatoona, the State of Alabama will be powerless to prevent this diversion of water from continuing, because of the potential rights which may vest in the residents of the State of Georgia (to the detriment of Plaintiff and its citizens) in such interstate waters under Federal common law. Thus, the findings of the Comprehensive Studies Plan and the study by the AWRSC may be rendered moot if water is permitted to be withdrawn from these reservoirs before such studies are complete.

20.     Plaintiff is informed and believes, and upon that basis alleges, that the State of Georgia has obtained authorization to construct up to twelve additional reservoirs in the State of Georgia. Plaintiff is further informed and believes, and upon that basis alleges, that each of these additional reservoirs will be constructed on rivers or tributaries of rivers which flow into the State of Alabama, including the rivers of the Tallapoosa River Basin, the ACF Basin, and the CA Basin. Plaintiff is further informed and believes, and upon that basis alleges, that the Corps has never considered the potential impacts of these additional reservoirs during its assessment of the potential impacts of the proposed withdrawal of water from Lake Lanier, Carters Lake, and Lake Allatoona.

21.     Plaintiff is informed and believes, and upon that basis alleges, that the City of Atlanta, Georgia has petitioned the State of Georgia, or other authorities with jurisdiction over discharges of waste water from the City of Atlanta, to permit an increase in the amount

11

of pollution introduced into the ACF Basin from the City of Atlanta. Plaintiff is further informed and believes, and upon that basis alleges, that the Corps has never considered the potential impacts of the proposed increase in the pollution in the ACF Basin during its assessment of the potential impacts of the proposed withdrawal of water from Lake Lanier.

## FIRST CAUSE OF ACTION

22.     Plaintiff realleges and incorporates by reference paragraphs 1 through 21 of this complaint as though fully set forth herein.

23.     Plaintiff is informed and believes, and upon that basis alleges, that the Corps has a duty to operate and maintain federally owned reservoirs for the benefit of all downstream users within the river basin where the reservoir is located. Plaintiff is further informed and believes, and upon that basis alleges, that the Corps breaches this duty if it benefits the interests of one downstream user to the detriment of another downstream user.

24.     Plaintiff is informed and believes, and upon that basis alleges, that the Corps' proposals to permit the withdrawal of water from Lake Lanier, Carters Lake, and Lake Allatoona, while the Comprehensive Studies Plan is being prepared, may operate to extinguish valuable rights of Plaintiff and its citizens in the interstate waters of the ACF and CA Basins for the unjustified future benefit of the residents of the State of Georgia. By recognizing the unsubstantiated interests of the State of Georgia and its citizens prior to assessing fully the potential environmental and economic impacts upon the State of Alabama and its vital natural resources as well as the probable abrogation of rights and interests of the State of Alabama and its citizens in these interstate waters, the Corps has breached its duty to operate Lake Lanier, Carters Lake, and Lake Allatoona in a neutral and objective

12

manner and these proposals have exceeded the scope of the Corps' authority to operate Lake Lanier, Carters Lake, and Lake Allatoona.

25.    The rate and quality of the flow of water into the State of Alabama through the ACF and CA Basins are critical determinants for the future economic development, environmental quality, and public health presently enjoyed by the State of Alabama and its citizens.  Plaintiff is informed and believes, and upon that basis alleges, that the withdrawal of water from Lake Lanier, Carters Lake, and Lake Allatoona will reduce the rate and quality of the flow of water into the ACF and CA Basins.  As a result, the State of Alabama's economic development will be hindered, the quality and quantity of environmental resources in the State of Alabama will be reduced, and the public health will be affected significantly.  Plaintiff is informed and believes, and upon that basis alleges, that the Corps does not have the authority or the right to impose the effects of increased demand for water within the State of Georgia, if any, upon the State of Alabama and its citizens by commandeering the rights of the people of the State of Alabama in and to the interstate waters of the ACF and CA Basins for the benefit of the State of Georgia.

26.    In the event the proposed withdrawal of water from Lake Lanier, Carters Lake, and Lake Allatoona operates to vest any rights to such water in the residents of the State of Georgia, Plaintiff and its citizens will be irreparably harmed.       Inasmuch as the Comprehensive Studies Plan is scheduled to take three to four years to complete, irreparable damage to the environment and natural resources of the State of Alabama and its citizens may result from withdrawals which occur before the Comprehensive Studies Plan is completed.  Even if the impacts from the withdrawals have not yet occurred, Plaintiff may

13

have no adequate means of challenging the proprietary of such withdrawals once rights to such water have vested.

27.     An actual controversy has arisen and now exists between Plaintiff and Defendants in that Plaintiff contends, and Defendants deny, that, under the circumstances set forth in Paragraphs 1 through 26 hereof, the Defendants have violated their duty to operate Lake Lanier, Carters Lake, and Allatoona in a neutral and objective manner by favoring the interests of the State of Georgia over the interests of the State of Alabama and its citizens and have exceeded the scope of their authority to operate Lake Lanier, Carters Lake, and Lake Allatoona.

## SECOND CAUSE OF ACTION

28.     Plaintiff realleges and incorporates by reference paragraphs 1 through 27 of this complaint as though fully set forth herein.

29.     The National Environmental Policy Act ("NEPA") mandates that the Federal Government use "all practicable means, consistent with other essential considerations of national policy, to improve and coordinate Federal plans, functions, programs, and resources to the end that the Nation may -

> (1)     fulfill the responsibilities of each generation as trustee of the environment for succeeding generations;
>
> (2)     assure for all Americans safe, healthful, productive, and aesthetically and culturally pleasing surroundings;

14

(3)     attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences;

. . .

(5)     achieve a balance between population and resource use which will permit high standards of living and a wide sharing of life's amenities; and

(6)     enhance the quality of renewable resources and approach the maximum attainable recycling of depletable resources."

42 U.S.C. § 4331(b).

30.     NEPA also requires all agencies of the Federal Government to "include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on -

(i)     the environmental impact of the proposed action,

(ii)    any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii)   alternatives to the proposed action,

(iv)    the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

15

> (v)     any irreversible and irretrievable commitments of resources
>         which would be involved in the proposed action should it be
>         implemented."

Id. § 4332(C) (emphasis added).

31.     Under regulations adopted by the Council on Environmental Quality and used by the
Corps, the Corps must follow a two-step process under NEPA to evaluate "Major Federal
Actions." See 40 C.F.R. §§ 1500 et seq. First, the Corps must prepare an Environmental
Assessment, unless the Corps has decided previously to prepare an Environmental Impact
Statement ("EIS"). Id. § 1501.3. An Environmental Assessment is defined as a "concise
public document for which a Federal agency is responsible that serves to:  (1) Briefly
provide sufficient evidence and analysis for determining whether to prepare an
environmental impact statement or a finding of no significant impact; (2) Aid an agency's
compliance with [NEPA] when no environmental impact statement is necessary; [and] (3)
Facilitate preparation of a statement when one is necessary."    Id. §  1508.9(a).
Environmental assessments must include a brief discussion of the need for the proposal,
alternatives to the proposal and the environmental impacts of the proposal and each
alternative, and a listing of agencies and persons consulted. Id. § 1508.9(b). Second, the
Corps must prepare either an EIS or a "Finding of No Significant Impact" (a "FONSI"). Id.
§ 1501.4. A FONSI is prepared if, based upon the Environmental Assessment, the Corps
determines that the environmental impacts of the proposal are insignificant so that an EIS
is not required. Id.

16

32.     Whether potential environmental impacts are significant must be determined by the Corps in terms of both context and intensity of potential impacts. 40 C.F.R. § 1508.27. The chosen context is usually dictated by the nature of the project: the broader the impacts of a proposed project, the broader the context must be. Id. In evaluating intensity, the Corps is directed to consider, among other things, the following:

   (1)   Impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial.

   (2)   The degree to which the proposed action affects public health or safety.

   (3)   Unique characteristics of the geographic area such as proximity to historic or cultural resources, park lands, prime farmlands, wetlands, wild and scenic rivers, or ecologically critical areas.

   (4)   The degree to which the effects on the quality of the human environment are likely to be highly controversial.

   (5)   The degree to which the possible effects on the human environment are highly uncertain or involve unique or unknown risks.

17

(6)   The degree to which the action may establish a precedent for future actions with significant effects or represents a decision in principle about a future consideration.

(7)   Whether the action is related to other actions with individually insignificant but cumulatively significant impacts. Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment. Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts.

. . .

(9)   The degree to which the action may adversely affect an endangered or threatened species or its habitat that has been determined to be critical under the Endangered Species Act of 1973.

(10)  Whether the action threatens a violation of Federal, State, or local law or requirements imposed for the protection of the environment.

Id. Plaintiff is informed and believes, and upon that basis alleges, that each of these factors argued in favor of finding that the proposed reallocation of water from Carters Lake and Lake Allatoona and the additional withdrawal of water from Lake Lanier significantly

18

affected the environment of the State of Alabama. None of these factors were addressed adequately by the Corps in its review of these actions under NEPA.

33.    With respect to the proposed Reallocation Reports for Carters Lake and Lake Allatoona as well as the PAC Notification Report for Lake Lanier, the Corps has attempted to comply with NEPA by simply preparing an Environmental Assessment, ignoring substantive and detailed objections of Plaintiff and others based upon potentially significant, irreversible impacts on the environment which may result from these proposals, and adopting a FONSI, arbitrarily and capriciously claiming that the proposals will have no significant effect on the environment. Each of the Environmental Assessments prepared by the Corps unreasonably and arbitrarily failed to develop an adequate evidentiary record to support the Corps' conclusion that an EIS was not required. For example, the Corps has reviewed the proposed reallocation of water from Carters Lake completely and totally independent of the reallocation of water from Lake Allatoona, notwithstanding the fact that both lakes are direct tributaries of the Coosa River and within the CA Basin. Under the regulations set forth above, the Corps was required to consider the cumulative impacts of the proposed reallocations from Carters Lake and Lake Allatoona on downstream interests in the CA Basin as a single project and not as independent actions. In addition, the Corps did not address the potential cumulative environmental impacts upon the State of Alabama and other downstream users from the additional reservoirs to be constructed in the State of Georgia. Plaintiff is informed and believes, and upon that basis alleges, that, once constructed, these additional reservoirs will effect both the flow and quality of water available to the State of Alabama and its citizens. Thus, the Corps arbitrarily and

19

capriciously failed to consider the cumulative impacts on the environment of the proposed withdrawals of water from Lake Lanier, Carters Lake, and Lake Allatoona and the additional reservoirs to be constructed as one action.

34.    As set forth in the written comments of Plaintiff in response to the draft Environmental Assessments, each of the Environmental Assessments arbitrarily and capriciously failed to consider and to analyze the potential environmental impacts on the ACF and CA Basins, including, without limitation, potential irreparable damage to the natural resources of Plaintiff and its citizens in the event flow rates into these Basins are decreased, irreversible loss of riparian rights to waters diverted from Lake Lanier, Carters Lake, and Lake Allatoona, probable reduction in the quantity and quality of water flowing into the State of Alabama, and likely loss of valuable public resources of Plaintiff and its citizens, such as groundwater rights, environmentally sensitive wetlands, recreational facilities, and navigation capacity.  The Environmental Assessments further unreasonably and arbitrarily failed to develop an adequate factual basis for its conclusion that the immediate withdrawal of substantial quantities of water from each of these lakes was necessary to satisfy the needs of the State of Georgia.

35.    Under regulations applicable to the Corps, NEPA mandates an EIS be prepared by the Corps for all "Major Federal Actions" significantly affecting the quality of the human environment.  In fact, the Corps has promulgated regulations which indicate that "proposed major changes in the operation and/or maintenance of completed projects" normally require an EIS.  33 C.F.R. § 230.6.  The actions of the Defendants in the proposed operations of Lake Lanier, Carters Lake, and Lake Allatoona are "Major Federal Actions" within the

20

meaning of NEPA. As alleged above, these actions either singularly or cumulatively may significantly affect the quality of the human environment in the State of Alabama. Accordingly, an EIS must be prepared before any action by the Corps is undertaken. The Defendants have not prepared an EIS addressing the impact on the environment in the ACF and CA Basins following the reallocation and increased withdrawal of water from Lake Lanier, Carters Lake, and Lake Allatoona as required by law.

36.     An actual controversy has arisen and now exists between Plaintiff and Defendants in that Plaintiff contends, and Defendants deny, that, under the circumstances set forth in Paragraphs 1 through 35 hereof, the Defendants have violated NEPA by failing to prepare an EIS for the cumulative impacts of the increased withdrawal of water from the ACF and CA Basins.

### THIRD CAUSE OF ACTION

37.     Plaintiff realleges and incorporates by reference paragraphs 1 through 36 of this complaint as though fully set forth herein.

38.     Plaintiff is informed and believes, and upon that basis alleges, that the Corps intends to permit the withdrawal of substantial quantities of water from Lake Lanier prior to the time that Congressional approval of the PAC Notification Report is received. Plaintiff is further informed and believes, and upon that basis alleges, that the Corps intends to permit the withdrawal of substantial quantities of water from Carters Lake and Lake Allatoona prior to the final approval of the Reallocation Reports. Thus, withdrawal of water from these reservoirs will be permitted without any environmental documentation under NEPA.

39.     As analyzed under the provisions of NEPA, Plaintiff is informed and believes, and upon that basis alleges, that permitting the withdrawal of substantial quantities of water from Lake Lanier, Carters Lake, and Lake Allatoona constitutes "Major Federal Actions" of the Corps, requiring compliance with NEPA. See 40 C.F.R. § 1508.18. As set forth above, the Corps is prepared to authorize the withdrawal of such water by signing contracts to permit such withdrawal on an "interim" basis, pending the completion of the Comprehensive Studies Plan.

40.     While the Corps has recognized the potential impacts on the human environment which the proposed actions may cause by authorizing the Comprehensive Studies Plan, the Corps has failed to comply with, and has made no colorable attempt to comply with, NEPA before entering into such contracts. Even if the Corps has complied with NEPA by adopting FONSIs with respect to the preparation of the Reallocation and PAC Notification Reports, a point which Plaintiff does not concede, that the contracts would be executed and become operative prior to the completion of the environmental review process mandated under NEPA for the Reports requires that such contracts be considered as independent actions under NEPA, triggering a requirement for separate study. The Defendants' decision not to prepare any environmental documentation regarding these contracts is a violation of NEPA and the Corps' obligations thereunder.

41.     An actual controversy has arisen and now exists between Plaintiff and Defendants in that Plaintiff contends, and Defendants deny, that, under the circumstances set forth in Paragraphs 1 through 40 hereof, the Defendants have violated NEPA by issuing contracts for the withdrawal of water from Carters Lake, Lake Allatoona, and Lake Lanier without

22

making any attempt to comply with NEPA by conducting the necessary environmental review.

## FOURTH CAUSE OF ACTION

42.     Plaintiff realleges and incorporates by reference paragraphs 1 through 41 of this complaint as though fully set forth herein.

43.     In addition to requiring the Corps to determine whether an EIS is needed for the proposed actions affecting Lake Lanier, Carters Lake, and Lake Allatoona, NEPA mandates that the Corps "utilize a systematic, interdisciplinary approach which will insure the integrated use of the natural and social sciences and the environmental design arts in planning and in decisionmaking which may have an impact on man's environment." 42 U.S.C. § 4332(2)(A).

44.     Plaintiff is informed and believes, and upon that basis alleges, that the Corps has failed to utilize such a systematic, interdisciplinary approach in approving the withdrawal of water from Lake Lanier, Carters Lake, and Lake Allatoona. As a result, the Corps has violated this requirement of NEPA in several ways, including, without limitation, the following:

> (a)     the Corps' failure to respond to and to address substantive concerns raised by the State of Alabama, the Alabama Department of Environmental Management, and the Alabama Department of Economic and Community Affairs as well as other agencies of the State of Alabama

23

with expertise and knowledge regarding the
dependence of the State of Alabama upon the
ACF and CA Basins;

(b)     the Corps' failure to consult meaningfully with
federal agencies and authorities within the State
of Alabama with expertise regarding the potential
impacts of the proposed projects on endangered
species within the ACF and CA Basins;

(c)     the Corps' failure to consult meaningfully with
federal agencies and agencies of the State of
Alabama with expertise regarding the potential
socio-economic impacts of the proposed projects
upon the State of Alabama and its future
development; and

(d)     the Corps' failure to consult meaningfully with
experts in the fields of hydrology, hydrogeology,
and other natural and social sciences.

45.     As an actual and proximate result of the Corps' violation of this provision of NEPA,
the State of Alabama and its citizens will suffer irreparable harm if the Corps permits the
withdrawal of water from Lake Lanier, Carters Lake, and Lake Allatoona.  Plaintiff is
informed and believes, and upon that basis alleges, that had the Corps complied with the
requirements of NEPA and utilized a systematic, interdisciplinary approach in approving the

24

withdrawal of water from Lake Lanier, Carters Lake, and Lake Allatoona, the Corps would have concluded that such action would significantly affect the quality of the human environment, necessitating the preparation of an EIS.

46.     An actual controversy has arisen and now exists between Plaintiff and Defendants in that Plaintiff contends, and Defendants deny, that, under the circumstances set forth in Paragraphs 1 through 45 hereof, the Defendants have violated NEPA by failing to utilize a systematic, interdisciplinary approach in approving the withdrawal of water from Carters Lake, Lake Allatoona, and Lake Lanier.

## FIFTH CAUSE OF ACTION

47.     Plaintiff realleges and incorporates by reference paragraphs 1 through 46 of this complaint as though fully set forth herein.

48.     In addition to requiring the Corps to determine whether an EIS is needed for the proposed actions affecting Lake Lanier, Carters Lake, and Lake Allatoona, NEPA mandates that the Corps "identify and develop methods and procedures . . . which will insure that presently unquantified environmental amenities and values may be given appropriate consideration in decisionmaking along with economic and technical considerations." 42 U.S.C. § 4332(2)(B).

49.     Plaintiff is informed and believes, and upon that basis alleges, that the Corps has failed to identify and to develop adequate methods and procedures to insure that presently unquantified environmental amenities and values were given appropriate consideration in its proposal to allow the withdrawal of water from Lake Lanier, Carters Lake, and Lake

Allatoona. As a result, the Corps has violated this provision of NEPA in several ways, including, without limitation, the following:

   (a)   the Corps' failure to provide an adequate time for public review and comment upon the proposed Reallocation Reports, and the Environmental Assessments;

   (b)   the Corps' proposal to permit the withdrawal of water from Lake Lanier, Carters Lake, and Lake Allatoona prior to the completion of the Comprehensive Studies Plan;

   (c)   the Corps' failure to hold any public hearings in the State of Alabama following the release of the draft Reallocation Reports, the draft Environmental Assessments or the FONSIs;

   (d)   the Corps' failure to balance fairly the interests of downstream users of the ACF and CA Basins against the purported needs of the State of Georgia; and

   (e)   the Corps' failure to evaluate potential impacts upon the State of Alabama as a result of interbasin transfers of water.

26

50.     As an actual and proximate result of the Corps' violation of this provision of NEPA, the State of Alabama and its citizens will suffer irreparable harm if the Corps permits the withdrawal of water from Lake Lanier, Carters Lake, and Lake Allatoona.  Plaintiff is informed and believes, and upon that basis alleges, that had the Corps complied with the requirements of NEPA and identified and developed methods and procedures to insure that presently unquantified environmental amenities and values within the State of Alabama were given appropriate consideration in its decision to approve the withdrawal of water from Lake Lanier, Carters Lake, and Lake Allatoona, the Corps would have concluded that such action would significantly affect the quality of the human environment, necessitating the preparation of an EIS.

51.     An actual controversy has arisen and now exists between Plaintiff and Defendants in that Plaintiff contends, and Defendants deny, that, under the circumstances set forth in Paragraphs 1 through 50 hereof, the Defendants have violated NEPA by failing to identify and to develop appropriate methods and procedures to evaluate the withdrawal of water from Carters Lake, Lake Allatoona, and Lake Lanier.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment on the causes of action alleged herein as follows:

1.     For a judicial declaration that the Defendants have violated NEPA by failing to prepare Environmental Impact Statements and to prepare a basin-wide assessment in support of the Reallocation Reports prepared for Carters Lake and Lake Allatoona and in support of the Post Authorization Change Notification Report prepared for Lake Lanier;

27

2.      For a judicial declaration that the Defendants have violated NEPA by failing to comply with NEPA before entering into water supply contracts for the withdrawal of water from Carters Lake, Lake Allatoona, and Lake Lanier;

3.      For a judicial declaration that the Defendants have violated NEPA by failing to utilize a systematic, interdisciplinary approach in approving the withdrawal of water from Carters Lake, Lake Allatoona, and Lake Lanier;

4.      For a judicial declaration that the Defendants have violated NEPA by failing to identify and to develop appropriate methods and procedures to evaluate the withdrawal of water from Carters Lake, Lake Allatoona, and Lake Lanier;

5.      For a preliminary and permanent injunction requiring the Defendants to comply with the provisions and regulations of NEPA;

6.      For a preliminary and permanent injunction requiring the Defendants to recall and to refrain from executing the proposed contracts for the withdrawal of water from Carters Lake, Lake Allatoona, and Lake Lanier, and prohibiting any increase in the withdrawal of water from Carters Lake, Lake Allatoona or Lake Lanier until such time as the Comprehensive Studies Plan has been completed, including all appropriate review and comment;

7.      That the Court award Plaintiff's costs of suit, including attorneys' fees; and

8.      For such other and further relief as the Court may deem just and proper to protect the interests of Plaintiff and the citizens of the State of Alabama.

DATED:  June 28, 1990

_____
Warren B. Lightfoot

28

John M. Johnson

William S. Cox III

**Special Assistant Attorneys General for the State of Alabama**

OF COUNSEL:

LIGHTFOOT, FRANKLIN, WHITE & LUCAS
300 Financial Center
505 North 20th Street
Birmingham, AL 35203-2706
(205)581-0700

29