UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **STATE OF ALABAMA**, <br> Plaintiff, <br><br> **and** <br><br> **STATE OF FLORIDA,** <br> Intervenor-Plaintiff <br><br> vs. <br><br> **UNITED STATES ARMY CORPS OF ENGINEERS**, *et al.*, <br> **Defendants**. | Case No. CV-90-BE-1331-E |

**MEMORANDUM OPINION**

Before the court are the Water Works and Sanitary Sewer Board of Montgomery, Alabama's Motion to Intervene (Doc. 264), and Alabama Power Company's Motion to Intervene (Doc. 266) . After reviewing the motions and briefs, for the reasons stated below, and for the reasons stated on the record at the June 30, 2005 hearing, the court grants the motions.

**I. Facts and Procedural Background**

Plaintiffs Alabama and Florida have filed complaints against the United States Army Corps of Engineers and several of the Corps' officers in their official capacities.[1] The Plaintiffs challenge a number of the Corps' activities, plans, and actions primarily regarding the management of three Georgia reservoirs upstream from Alabama and Florida: Carters Lake, Lake

---

[1] For a more detailed history of this fifteen-year-old case, see *August 10, 2005 Memorandum Opinion regarding Alabama and Florida's [s]econd Motions to Amend*, Doc. 331, at 1-7.

1

Allatoona, and Lake Lanier. Carters Lake and Lake Allatoona are part of the Alabama-Coosa-Tallapoosa (ACT) river basin. Lake Lanier is part of the Apalachicola-Chattahoochee-Flint (ACF) river basin.

On December 3, 2004, the Montgomery Water Works Board filed a renewed motion to intervene to protect its interest in adequate, quality water supplies from the ACT basin to operate its water treatment and wastewater treatment facilities. On the same day, Alabama Power also moved to intervene to protect its interest in adequate water supplies to operate its dams, reservoirs, and hydroelectric, steam, and nuclear power plants in both the ACT and ACF river basins, and to protect its interest in eventual Corps approval of one of its plans for development, which the Corps has withheld because of the October 15, 2003 Preliminary Injunction Order in this case.[2]

## II. Discussion

As a preliminary note, rather than presenting any reason why the motions to intervene should not be granted under the requirements of either Rule 24(a) or Rule 24(b), Georgia and ARC oppose the motions to intervene only by challenging the merits of–and the court's jurisdiction over–the underlying action.[3] Thus, Georgia's and ARC's submission is more in the

---

[2] On October 15, 2003, this court entered a preliminary injunction prohibiting the Corps from filing a certain settlement agreement in a related case, or, without this court's approval, entering into any other new storage or withdrawal contracts affecting the ACF river basin. *See October 15, 2003 Preliminary Injunction Order*, Doc. 192.

[3] Having already thoroughly considered the Defendants' challenges to its subject matter jurisdiction in its memorandum opinion addressing the Defendants' objections to Alabama's and Florida's motions to amend their complaints, the court will not discuss subject matter jurisdiction here. *See August 10, 2005 Memorandum Opinion regarding Alabama and Florida's [s]econd Motions to Amend*, Doc. 331.

nature of a premature motion to dismiss and is, therefore, inapposite here.

**A. Intervention of Right**

Under Federal Rule of Civil Procedure 24(a), Alabama Power and the Montgomery Water Works Board qualify to intervene in this action as a matter of right. Rule 24(a) provides that,

> [u]pon timely application[,] anyone shall be permitted to intervene in an action. . . when the applicant claims an interest relating to the property or transaction [that] is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Although the case before the court is fifteen years old, the motions to intervene are timely. The court has only recently lifted the stay of this case. *See* Doc. 262, *November 8, 2004 Order Lifting Stay and Permitting Renewed Motions to Intervene*. The court has not yet conducted proceedings on the merits of the case, and the movants' intervention will not delay the proceedings.

Further, each movant claims an interest relating to the property or transaction that is the subject of the action, *i.e.*, the Corps' operation of reservoirs in the ACT and ACF river basins. Alabama Power seeks to intervene to protect its interest in adequate water supplies to operate its dams, reservoirs, and hydroelectric, steam, and nuclear power plants in both basins. Alabama Power also seeks to intervene to protect its interest in obtaining the Corps' approval of its plan of development. Alabama Power needs the Corps' approval so it can pursue the licensing of its hydroelectric projects in the Coosa River. The Corps has so far withheld its approval because of the October 15, 2003 preliminary injunction entered in this case.

The Montgomery Water Works Board's interest in the subject of the action arises from the Board's need for adequate, quality water supplies from the ACT river basin to operate its water treatment and wastewater treatment facilities to provide clean drinking water and adequate wastewater treatment for its customers. *See* Doc. 265, Ex. 1, *Morgan Affidavit*, ¶ 5. The Montgomery Water Works Board claims that "any action that diminishes water flows [in the ACT river basin] will cause serious harm to the Board and its customers, including the degradation of water quality and impairment of the Board's ability to adequately treat wastewater." *See* Doc. 265, Ex. 1, *Morgan Affidavit*, ¶¶ 4, 6. In addition, the Board contends that if the Corps, through improper management of its reservoirs, diverts water from the ACT river basin, the resulting changes in average flow rates in the basin would alter permit requirements for each of the Board's water and wastewater treatment facilities. The Board claims that it would then have to spend millions of dollars to modify those facilities to meet the altered permit requirements. *See* Doc. 265, Ex. 1, *Morgan Affidavit*, ¶6.

As a practical matter, disposition of the action in these movants' absence may impair or impede their ability to protect their interests. Where, as here, "'a party seeking to intervene in an action claims an interest in the very property and very transaction that is the subject of the main action, the potential *stare decisis* effect may supply the practical disadvantage [that] warrants intervention as of right.'" *See Georgia v. U.S. Army Corps of Eng'rs*, 302 F.2d 1242, 1258 (11th Cir. 2002) (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989)) (holding that a district court erred in denying a private party's motion to intervene in a case very similar to the case before this court); *see also, e.g., United States v. Olin Corp.*, 606 F. Supp. 1301, 1308 (N.D. Ala. 1985) (Propst, J.) (holding that, in a prior case, "Alabama and the United States were suing

in a *parens patriae* capacity as representative[s] of all of [Alabama's] citizens" and that "because the instant plaintiffs are seeking the same relief as that requested and attained by Alabama and the United States in the earlier litigation... plaintiffs' injunctive claims are barred by *res judicata*").

Finally, both movants have demonstrated that each interest is not adequately represented by existing parties.  "An individual seeking intervention ordinarily is required to make only a minimal showing that representation of his interest may be inadequate."  *Envtl. Def. Fund, Inc. v. Higgenson*, 631 F.2d 738, 740 (D.C. Cir. 1979), *cited in Olin Corp.*, 606 F. Supp. at 1307.  The evidence presented by each movant more than satisfies the requirement of a minimal showing, and overcomes the *parens patriae* presumption of adequate representation.

Alabama has filed this lawsuit as *parens patriae*.  In some courts, when a citizen or subdivision of a state seeks to intervene in a case in a district court in which the state is already a party as *parens patriae*, "[a] minimal showing that the representation may be inadequate is not sufficient."  *Higginson*, 631 F.2d at 740, *cited in Olin Corp.*, 606 F. Supp. at 1307.  Rather, to intervene in those jurisdictions, a citizen or subdivision of that state must overcome the presumption of adequate representation by demonstrating "that its interest is in fact different from that of the state <u>and</u> that that interest will not be represented by the state."  *Higginson*, 631 F.2d at 740 (emphasis added), *cited in Olin Corp.*, 606 F. Supp. at 1307; *cf. New Jersey v. New York*, 345 U.S. 369, 373 (1953) (holding that, in cases before the Supreme Court by its original, exclusive jurisdiction, "[a]n intervenor whose state is already a party should have the burden of showing some compelling interest in his own right, apart from his interest in a class with all other citizens and creatures of the state, which interest is not properly represented by the state").

5

However, the impact of the *parens patriae* presumption of adequate representation on a moving intervenor's burden is a question of first impression in the Eleventh Circuit.

As noted above, an entity may not intervene as a matter of right if "the applicant's interest is adequately represented by existing parties." Fed R. Civ P. 24(a). However, when a state sues in *parens patriae*, the law *presumes* the state will seek to achieve the objectives of all its citizens. *See Olin Corp.*, 606 F. Supp. at 1305 (citing *New Jersey v. New York*, 345 U.S. 369, 373 (1953)). Therefore, assuming Alabama has standing to proceed in *parens patriae*,[4] Alabama presumably represents the interests of all its citizens in this matter.[5] *See New Jersey v. New York*, 345 U.S. 369, 373 (1953). Further, "[w]hen applicants for intervention seek to achieve the same objectives as an existing party in the case, that party is presumed to represent the applicants' interests adequately." *Meek v. Metropolitan Dade County*, 985 F.2d 1471, 1477 (11th Cir. 1993). Thus, when a state is a party to a suit in its *parens patriae* capacity, a citizen of that state moving to intervene as a matter of right must either show that the state will not adequately protect an

---

[4]Because standing is a jurisdictional prerequisite, at the June 30, 2005 hearing on this motion, the court asked Alabama and Florida to explain why they have standing to bring their amended complaints in their respective *parens patriae* capacities. *See Massachusetts v. Mellon*, 262 U.S. 447, 485 (1923) ("While the state, under some circumstances, may sue in [*parens patriae*] capacity for the protection of its citizens, it is no part of its duty or power to enforce their rights in respect of their relations with the federal government."); *Chiles v. Thornborough*, 865 F.2d 1197, 1208-09 (11th Cir. 1989) (questioning *Mellon's* implications); *see also Connecticut v. Healthnet, Inc.*, 383 F.3d 1258, 1262 (11th Cir. 2004) ("When a state sues in *parens patriae* to enforce a federal statute, it must demonstrate that, in enacting the statute, Congress clearly intended that the states be able to bring actions in that capacity."). Because Alabama and Florida also sue on their own behalf, the court's concerns about *parens patriae* standing do not preclude it from exercising jurisdiction over the case.

[5]Alabama does not oppose Alabama Power's motion to intervene in the event that the court finds that the Alabama Power has overcome the *parens patriae* presumption of adequate representation. Florida does not oppose Alabama Power's motion to amend.

interest the movant shares with other citizens of the state or show that the state does not "seek to achieve the same objectives"–*i.e.*, that the movant seeks to pursue an interest apart from a shared interest with the class of all other citizens of the state. In showing that the state will not adequately protect an interest the movant shares with other citizens of the state, the movant must overcome the presumption that the state adequately represents its interests. In showing that the state does not seek to achieve the same objectives as it does, a movant must establish that its interest is not among those interests the state is presumed to represent in *parens patriae*–the shared interests and objectives of all the state's citizens.

Unlike in Supreme Court cases involving that Court's original jurisdiction and requiring a showing of a "compelling" interest apart from a state's other citizens,[6] *see, e.g., New Jersey v. New York*, 345 U.S. 369, 373 (1953), requiring an intervenor in a district court case to overcome the presumption of adequate representation is little more than an application of the general principle that a person moving to intervene as a matter of right must show that his "interest is [not] adequately represented by existing parties." *See* Fed. R. Civ. P. 24(a). Thus, under the "minimal showing" standard, the *parens patriae* presumption of adequate representation, "like any [presumption], serves to guide a court's analysis of facts. It is not a substitute for facts, nor is it to be given any weight if the facts tend to contradict the presumed result. Rather, like the great

---

[6]Unlike a district court, the Supreme Court has the prerogative to "incline to a sparing use of [its] original jurisdiction so that [its] increasing duties with the appellate docket will not suffer." *See Illinois v. City of Milwaukee*, 406 U.S. 91, 94 (1972). In restricting intervenors to those with a "compelling" interest apart from interests already represented by a state, the Supreme Court sought to protect its original jurisdiction from expansion "to the dimensions of ordinary class actions." *See New Jersey v. New York*, 345 U.S. at 373. The court has found no case suggesting that a district court is similarly endowed with discretion to prevent intervention of right to protect its docket.

majority of presumptions, at most it merely requires the presumed result <u>unless</u> some evidence is placed before the court tending to rebut it." *See Meek*, 985 F.2d at 1477 (reviewing a different presumption of adequate representation than the *parens patriae* presumption) (emphasis added).

On this issue of first impression in the Eleventh Circuit, the court holds that it must consider the *parens patriae* presumption of adequate representation in ruling on a motion to intervene. However, because a party seeking to intervene in a suit before a district court need only make a "minimal" showing of inadequate representation, the court further holds that, to overcome the *parens patriae* presumption on a motion to intervene in district court, the movant must demonstrate by a minimal showing *either* that the state will not adequately protect an interest the movant shares with the state's other citizens, *or* that the state does not seek to achieve the same objectives as the movant.

The court's conclusion is consistent with Eleventh Circuit precedent, which, although not mentioning a *parens patriae* presumption of adequate representation *per se*, does require movants seeking to intervene in actions where their government is already a party to make a minimal showing that their interests are different from the shared interests and objectives of all the government's citizens. *Cf., e.g., Georgia v. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) (holding that Southeastern Federal Power Customers met its "minimal" burden of showing that a federal government entity would not adequately protect its interests). *But see Envtl. Def. Fund, Inc. v. Higginson*, 631 F.2d 738, 740 (D.C. Cir.1979), *cited in Olin Corp.*, 606 F. Supp. at 1307 (holding that, when a citizen or subdivision of a state seeks to intervene in a suit in district court in which the state is already a party as *parens patriae* "[a] minimal showing that the representation may be inadequate is not sufficient").

Alabama Power has demonstrated that its interest, in fact, differs from that of Alabama. Alabama's interests are general and concern the management of *all* the water resources in the ACF and ACT river basins. Alabama represents *all* its citizens, including citizens upstream and downstream from Alabama Power's operations. Some of those citizens' interests in securing ACT and ACF basin water, or in the status of this court's October 15, 2003 preliminary injunction, may well compete with Alabama Power's interests. *Cf. Meek v. Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993) (finding citizens' interests differed from their county government's interests where the government was likely concerned with overall fairness, the expense of litigation, politics, and the social and political divisiveness of the issues). In contrast to Alabama's general representation of all its citizens and their diverse interests in the socially, economically, and politically divisive issue of water allocation, Alabama Power specifically desires to protect the supply of water needed for *its* power generation operations, and to protect *its* interest in obtaining the Corps' approval for *its* development plan. Therefore, Alabama Power's specific interest in fact diverges from Alabama's general interest.

Like Alabama Power, the Montgomery Water Works Board has also shown that its interest differs from Alabama's. Alabama's interest in representing all its citizens includes the representation of citizens upstream and downstream from Montgomery whose interests in securing ACT basin water likely compete with the Montgomery Water Works Board's interests. *Cf. Meek v. Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993). In contrast to Alabama's general representation of all its citizens' socially, economically, and politically diverse interests in water allocation, the Montgomery Water Works Board specifically desires to protect the quality and quantity of water available particularly to it and its customers; preserve its permit

requirements; and avoid costly changes to its facilities.  Therefore, the Montgomery Water Works Board's interest indeed differs from the interests Alabama represents *in parens patriae*.

Alabama Power and the Montgomery Water Works Board have also demonstrated that Alabama will not adequately represent their specific interests.  Alabama's political obligation to balance a wide range of competing interests in water from the ACT and ACF basins could well lead to a result in some degree detrimental to these movants' specific interests.  *See South Dakota v. Ubbelohde*, 330 F.3d 1014, 1023-25 (8th Cir. 2003) ("Given that the [*parens patriae* governmental entity] is asked to balance multiple interests... it cannot adequately represent the interests of downstream users in this case."); *see also Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (holding, in case where Corps might correctly have been considered *parens patriae*, that the district court erred in denying private entity's motion to intervene in water allocation case, finding that the Corps would not adequately represent the private party's interest); *cf. Clark v. Putmam County*, 168 F.3d 458, 461-62 (11th Cir.1999) (rejecting a different presumption of adequate representation by county government on issue in which intervening voters' interests differed with interests of other county citizens).

Because the movants have demonstrated that their interests in fact diverge from those of Alabama, and, alternatively, because the movants have demonstrated that Alabama will not adequately represent their interests, the movants have overcome the presumption that Alabama will represent their interests in this case and have, therefore, satisfied Rule 24(a)'s requirement that they show that their interests are not already adequately represented by existing parties.

Because the movants meet all of the requirements of Federal Rule of Civil Procedure 24(a), they are entitled to intervene as a matter of right.

### B. Permissive Intervention

Because the court finds that both movants qualify to intervene as a matter of right, it need not address the alternative basis of permissive intervention. However, because the alternative ground could also support the petitions to intervene, the court will discuss permissive intervention as well.

Rule 24(b) provides that,

> [u]pon timely application[,] anyone may be permitted to intervene in an action... when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The movants' claims and the main action share common questions of law and fact, including questions pertaining to the appropriate operation of Corps' reservoirs in the ACT and ACT river basins. The movants' intervention is particularly appropriate in this case because Rule 24(b) intervention is readily permitted when proposed intervenors demonstrate, as have the movants now before this court, that they have real economic stakes in the outcome and that the likelihood of future harm to their interest is significant. *See, e.g.*, *Palmer v. Nelson*, 160 F.R.D. 118, 122 (D. Neb. 1994). In addition, as discussed above, the movants' intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Therefore, because the movants meet Rule 24(b)'s requirements for permissive intervention, as an alternative ground, the court will grant the movants permission to intervene.

### C. Conclusion

Because Alabama Power and the Montgomery Water Works Board meet the requirements

of Rule 24(a), they are entitled to intervene as a matter of right. Alternatively, because the movants also meet the requirements of Rue 24(b)'s provision for permissive intervention, the court will grant them permission to intervene. Therefore, the court grants the motions to intervene.

The court will enter a separate Order in accordance with this Memorandum Opinion.

DONE and ORDERED this 10th day of August, 2005.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE