2006 Apr-03 PM 05:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED
2006 Apr-03 PM 05:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

STATE OF ALABAMA, )
    Plaintiff, )
     )
  and )
     )
STATE OF FLORIDA, )
    Intervenor-Plaintiff )    CIVIL ACTION NO.:  CV-90-BE-1331-E
     )
    v. )
     )
UNITED STATES ARMY CORPS )
  OF ENGINEERS, et al., )
    Defendants. )

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT
UNITED STATES ARMY CORPS OF ENGINEERS SHOULD NOT BE HELD
<u>IN CONTEMPT AND SANCTIONED</u>**

    Plaintiffs State of Alabama ("Alabama") and State of Florida ("Florida") submit this reply brief in support of their motion seeking an order from this Court directing Defendant United States Army Corps of Engineers (the "Corps") to show cause why it should not be held in contempt of this Court's Order dated September 19, 1990, and sanctioned for its conduct ("Plaintiffs' Motion").

<u>Introduction</u>

    The Corps should be held in contempt for its flagrant violation of the Court's 1990 stay order.  Far from expressing remorse for its bad faith violation of the order, the Corps essentially says, "So what?"  By suggesting that the Court is toothless to remedy the damage that the Corps has done, the Corps flaunts its violation.  Acceptance of the Corps' position would set a

dangerous precedent by establishing a route by which parties can disregard the Court's orders with impunity.   Neither the Corps, State of Georgia ("Georgia"), nor the Atlanta Regional Commission ("ARC") offer any viable argument as to why the Court should not issue an order to show cause.   Accordingly, the motion filed by Alabama and Florida should be granted.

I.      **Alabama and Florida Have Provided Sufficient Evidence to Support a Finding of Contempt.**

Alabama and Florida have presented clear and convincing evidence to support the exercise of the Court's civil contempt power.   The Corps, Georgia, and ARC correctly note in their briefs that a party seeking an order of civil contempt must present clear and convincing evidence that (1) a court order was violated; (2) the order was clear and ambiguous; and (3) the contemnor had the ability to comply with the order had it chosen to do so.   *See* Federal Defendants' Opposition at p. 3 (citing *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002)).   Neither the Corps, Georgia, nor ARC offers any explanation, however, as to how the evidence previously presented to the Court, virtually all of which was undisputed, was sufficient to support the Court's previous findings, but nonetheless falls short of the clear and convincing standard.   Instead, those parties use their arguments concerning the evidentiary standard as an excuse to reargue numerous points that they have made previously and that this Court correctly rejected.   The undisputed facts, however, have not changed, and neither should the Court's conclusions regarding them.

A.      **A valid court order was violated.**

No party can seriously dispute that the 1990 stay order was a valid order and the Corps violated it by entering into the D.C. settlement agreement.   This Court concluded that the 1990 Order was a valid order, *see* Doc. 192, at pp. 2-4 (October 15, 2003, Order) (holding that "the 1990 stay Order and its precedent Joint Motion were the controlling documents in this case at the

time of the D.C. agreement" and noting that "[t]he words and actions of the defendants since 1990 support the court's conclusion"), and that the Corps violated the 1990 Order.  *See, e.g., id.* at p. 6 ("[T]he court finds the proposed D.C. agreement clearly violates the 1990 Order.  The controlling 1990 stay Order in this case bars even the formalization of such plans by its terms.").[1] Alabama and Florida presented extensive evidence that supported those conclusions.  *See, e.g.*, Doc. 130, at pp. 3-5 (State of Alabama's Brief in Support of its Motion for a Temporary Restraining Order, Preliminary Injunction and Order Declaring Settlement Agreement Null and Void);  Doc 41 (Joint Motion to Stay); Doc. 133, Ex. 1 (D.C. agreement).[2]

To illustrate the absurdity of the position of the Corps, Georgia, and ARC that this Court was not presented with sufficient evidence to support its conclusion that the Corps' execution of the D.C. agreement violated the 1990 Order, one need look no further than the 1990 Order itself. That order prohibited the Corps from "execut[ing] any contracts or agreements that are the subject of the complaint."  Doc. 41 at ¶2.  The Joint Motion to Stay, signed by the Corps' counsel, that led to issuance of the 1990 Order provides:

---

[1] *See also* Doc. 274, at pp. 3-4 (February 18, 2005, Memorandum Opinion) (noting "this court's finding that the D.C. agreement violated the 1990 stay Order" and that "the negotiations that led to the settlement embodied in the D.C. agreement *did* violate the 1990 stay Order.") (emphasis in original).

[2] In addition, Alabama and Florida have presented this Court with voluminous other evidence detailing the conduct of the Corps during the course of this litigation.  Plaintiffs have submitted prior briefs discussing this evidence, and this Court has heard oral argument concerning this evidence on more than one occasion.  *See, e.g.,* Docs. 129 (Motion for Temporary Restraining Order, Preliminary Injunction, and to Have Settlement Agreements Entered into by Defendant Declared Null and Void), 130 (Supporting Brief), 133 (Supporting Brief), 134 (Affidavit of T. Glenn), 156 (Renewed Motion for Temporary Restraining Order, Preliminary Injunction, and to Have Settlement Agreements Entered into by Defendant Declared Null and Void), 166 (Florida's Brief in Support of Renewed Motion for Temporary Restraining Order, Preliminary Injunction, and to Have Settlement Agreements Entered into by Defendant Declared Null and Void), 173 (Evidentiary Submission), 248 (Consolidated Response of State of Alabama and State of Florida to Motions to Dissolve Preliminary Injunction), 249 (Evidentiary Submission).

3

> [O]n June 28, 1990, Plaintiff [Alabama] filed the present action challenging the *operations and proposed modifications to the operations* of three federally owned and operated reservoirs located within river basins which flow into and through the State of Alabama *and seeking to enjoin further action by the Defendants until additional environmental and administrative reviews have been completed*;

*See* Doc. 41, at p. 1 (Joint Motion to Stay) (emphasis added).  If nothing else, the D.C. agreement is "further action by the Defendants" taken prior to the completion of "additional environmental and administrative reviews."  *Id.*

As the terms of the Joint Motion to Stay recognize, Alabama's complaint challenged the Corps' decisions to operate its reservoirs for water supply without first meeting its environmental obligations and obtaining Congressional approval to do so.  Alabama alleged that the Corps had violated its duty to operate these reservoirs only for Congressionally authorized purposes, *see* Doc. 1, ¶8 (Complaint), and that these violations, in part, took the form of allowing water supply withdrawals pursuant to proposed contracts that were to be executed prior to completion of a NEPA analysis and in the absence of Congressional authorization.  *Id.* at ¶3-5, 12, 17, 28, 36, 38-41, 44, 51.  In total, the Corps' plan of action had called for reallocating some 238,000 acre-feet of storage in Lake Lanier to water supply purposes.  *See* Doc. 134, Ex. 7, at I-1 - I-3 (Affidavit of T. Glenn).

The D.C. agreement plainly is an agreement implicating the subject of Alabama's complaint.  On its face, it is an agreement between the Corps and the same municipal entities with which the Corps intended to contract in 1989.  The D.C. agreement would reallocate 240,000 acre-feet of storage in Lake Lanier to water supply, *see* Doc. 129, Ex. C, at §3.1.1(a)-(c) (D.C. agreement), an action of at least the same magnitude and consequence as the Corps' 1989 plan.  *See* Doc. 134, ¶16-17, Ex. 7, at I-1 - I-3 (Affidavit of T. Glenn).  This Court, therefore, correctly concluded that the D.C. agreement implicated the subject of the complaint.

Contrary to the suggestion by the Corps, the D.C. agreement goes far beyond an agreement to end litigation subject to commitments by the parties to undertake or refrain from future actions. It is a binding commitment by the Corps to execute specific contracts for withdrawal and use of certain amounts of water over a defined period of time, and a concomitant commitment by the water suppliers to pay fixed prices for such withdrawals. *See* Doc. 129, Ex. C, at §§ 2(xxxvi), 3.1, 3.1.1, 3.1.2(a)(d), 3.1.3, 3.1.5, 5.2 (D.C. agreement). It is precisely the type of contract challenged by Alabama and prohibited by the 1990 Order, as this Court previously (and correctly) found.[3]

### B.  The 1990 order is clear and definite.

There also is no doubt that the 1990 Order was sufficiently definite to be binding on the Corps. Georgia and ARC erroneously argue that the 1990 Order failed to comply with Rule 65(d) of the Federal Rules of Civil Procedure.[4] Conspicuously missing from the brief filed by Georgia and ARC was any discussion of the controlling Eleventh Circuit case in this area. The Eleventh Circuit has stated that the polestar of Rule 65(d) analysis is whether the parties understood their obligations under the order. *See Combs v. Ryan's Coal Co., Inc*., 785 F.2d 970, 978 (11th Cir. 1986) ("A court may also disregard [a Rule 65(d)] defect if it is clear from the

---

[3] The suggestion by Georgia and ARC that because the document that is the D.C. agreement did not exist at the time the 1990 Order was entered, it could not be prohibited by that Order is as absurd as it is outrageous. As discussed above, the D.C. agreement represents and comprises the very actions challenged in Alabama's original complaint. To say that the Corps could avoid its obligations under the 1990 Order—obligations to which the Corps voluntarily agreed—by simply drafting a new document would render the mandates of this Court and the agreement by the Corps completely meaningless.

[4] Although the Corps does not specifically invoke Rule 65(d), it makes the same argument that the 1990 Order was not sufficiently clear.

totality of the language in the various documents that the contemnors understood their obligations under the injunction."); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1204 (11th Cir. 2001) (rejecting a rigid application of Rule 65(d)). Thus, a case-by-case analysis is required when considering Rule 65(d) attacks, and the court looks at the totality of the facts and language in the documents at issue. *Combs*, 785 F.2d. at 979 (stating that the Supreme Court has not announced a "per se requirement of dismissal where a trial court fails to adhere strictly to provisions of [Rule 65]").[5]

Applying the Eleventh Circuit's analysis to the 1990 Order, one must conclude that the order complied with Rule 65(d). Most importantly, the Order was premised on a Joint Motion to Stay that the parties jointly drafted, agreed to, and filed with the court. *See* Doc. 44, at pp. 1-2. Thus, the Corps obviously had notice of the prohibited conduct because the Corps itself participated in defining what constituted such conduct. *See Williams v. City of Dothan*, 818 F.2d 755, 761 (11th Cir. 1987) (stating that rather than applying Rule 65(d) rigidly, appellate courts determine the propriety of an injunctive order by inquiring into whether the parties subject thereto understand their obligations under the order).

Moreover, the Corps' long-standing affirmative compliance with the 1990 Order obviates any claim of confusion in this case. On more than one occasion, the Corps specifically indicated that it needed Alabama's consent in order to comply with the terms of the 1990 Order.[6] These

---

[5] Georgia and ARC place great reliance on the Seventh Circuit's decision in *H.K. Porter Co., Inc. v. Nat'l Friction Prods. Corp*., 568 F.2d 24 (7th Cir. 1978). As demonstrated by the discussion above of the Eleventh Circuit's application of Rule 65(d), this Circuit has declined to follow the rigid interpretation of Rule 65(d) advocated in *H.K. Porter*.

[6] The conduct of the Corps in this regard is discussed in more detail in the State of Alabama's Brief in Support of its Motion for a Temporary Restraining Order, Preliminary Injunction and Order Declaring Settlement Agreement Null and Void. *See* Doc. 130, at pp. 4-5. *See also* Doc. 134, at Ex. 6, 10 (Affidavit of T. Glenn).

actions definitively demonstrate that the Corps understood its obligations under the 1990 Order and foreclose any argument by the Corps to the contrary.[7]  *See Tom James Co. v. Morgan*, 141 Fed. Appx. 894, 897-98 (11th Cir. 2005) ("[The defendant] voluntarily agreed to be bound by the terms of the injunction as part of the settlement agreement negotiated to amicably resolve the suit Tom James filed against [the defendant]. . . . At no point prior to the contempt proceeding did [the defendant] complain to the court about the adequacy of the terms of the injunction or seek to have it modified.  Accordingly, at this point, any objection to the specific terms of the injunction is deemed waived.").

Likewise, the contention by Georgia and ARC that the 1990 Order is not judicially enforceable because it represents nothing more than an abstract conclusion of law is completely without merit.[8]  In the 1990 Order, this Court stated that it viewed the parties "as bound by the terms of their joint motion."  *See* Doc. 44.  One of the terms of the Joint Motion to Stay forbade the parties from "execut[ing] any contracts or agreements which are the subject of the complaint in this action unless expressly agreed to, in writing," by Alabama and Florida.  *See* Doc. 41, at ¶2.  Clearly, the 1990 Order, by adopting the terms of the Joint Motion to Stay, forbade the parties from entering into agreements that were the subject of the underlying litigation.  Any

---

[7] In addition, as this Court previously recognized:  "As recently as January 31, 2003, this court expressly referenced the relevant 1990 stay Order and Joint Motion language cited *supra*, noting '[t]his court has not lifted the stay that was granted pursuant to the terms of the [1990] Joint Motion to Stay Proceedings.'  Neither the Corps nor Georgia inquired of or protested this recent, explicit affirmation of the 1990 stay Order."  Doc. 192, at pp. 3-4 (October 15, 2003, Order).

[8] This attempt to limit the terms contained within the Joint Motion to Stay as part of a "private, bilateral 'agreement'" rather than as part of a judicially-enforceable order is particularly remarkable in light of the fact that in 1990 ARC sought leave of this Court to file an opposition to the Joint Motion to Stay, arguing that approval of the Joint Motion to Stay would validate a "consent injunction."  *See* Doc. 46, at pp. 6-7 (Opposition by Water Supply Intervenors to the Joint Motion to Stay Proceedings).

doubt about the enforceability of the 1990 Order was resolved in this Court's January 31, 2003, Order and its October 15, 2003, Order granting the preliminary injunction.  Both the October 15, 2003, Order and the January 31, 2003, Order clearly show that this Court interpreted its 1990 Order as an "order" limiting the parties' ability to enter into agreements that touched upon the subject matter of the underlying litigation.  *See* Docs. 132 (ordering the parties to take no actions that would violate the 1990 "Order" including the execution of "agreements which are the subject of the complaint in this action"), 192 (granting preliminary injunction).  Notwithstanding any disagreement by Georgia and ARC, this Court is accorded deference in interpreting its own orders.  *Cave v. Singletary*, 84 F.3d 1350, 1354 (11th Cir. 1996) (citing *Matter of Chicago, Rock Island and Pacific R.R. Co*., 865 F.2d 807, 810-11 (7th Cir. 1988) ("We shall not reverse a District Court's interpretation of its own order unless the record clearly shows an abuse of discretion.  The District Court is in the best position to interpret its own orders.")).

The Corps' execution of the Joint Motion to Stay that led to the 1990 Order coupled with the Corps' compliance with the 1990 Order over many years also belies the Corps' (and Georgia and ARC's) belated reliance on this Court's conclusion in another context that the subject matter of Alabama's 1990 complaint was difficult to ascertain.  If one looks only at how the Corps described the complaint in the Joint Motion to Stay, *see supra* at § I.A., then it is plain that the Corps fully understood that its action in executing the D.C. agreement ran afoul of the 1990 Order.

### C.    The Corps had the ability to avoid violating the court order.

The Corps plainly has the ability to avoid violating the 1990 Order.  Neither the Corps, Georgia, nor ARC contends otherwise.

### II.    Plaintiffs Have Not Received the Full Benefit of the 1990 Order.

This Court has already found that "Alabama and Florida did not receive the full benefit of the 1990 Order because, by failing to notify them of the settlement negotiations before those negotiations were complete, the Corps robbed Alabama and Florida of the opportunity to participate in the negotiations or to litigate their objections with the benefit of timely notice and compliance with the discovery requirements."  *See* Doc. 274, at p. 5 (February 18, 2005, Memorandum Opinion).[9]  The Corps takes issue with this finding, arguing that by giving notice of termination after its execution of the D.C. agreement, Plaintiffs have received the full benefit of the 1990 Order.  This position, however, has absolutely no basis in fact.  As this Court recognized, the 1990 Order entitled Alabama and Florida not just to notice but to advance notice of the Corps' intent to terminate the stay provision of that Order.  Once the Corps committed itself to the obligations of the D.C. agreement, Alabama and Florida were deprived of the benefit of the 1990 Order's notice provision.  This Court has already rejected the Corps' argument that

---

[9] Florida does have standing to seek contempt because it was clearly an intended beneficiary of the 1990 rder as evidenced by the language of the Joint Motion to Stay.  For example, the Joint Motion states:  (1) "Defendants agree not to execute any contracts or agreements which are the subject of the complaint in this action unless expressly agreed to, in writing, by Plaintiff *and Florida*."  Doc. 41 at 2 (emphasis added); (2) "Plaintiffs and Defendants believe that a stay of these proceedings will facilitate continued negotiations by, between, and among Plaintiff, Defendants, Florida and Georgia."  *Id.*.at p. 2; and (3) "Plaintiff and Defendants agree that this stay may be terminated upon notice to the Court at any time by Plaintiff or Defendants and *by providing written notice to the non-terminating parties and counsel of record for each non-party that has petitioned to intervene in this action*."  *Id.* at p. 3 (emphasis added).  Further, Federal Rule of Civil Procedure 70 supports Florida's standing to enforce the 1990 Order and states:  "When an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party . . ."  *See also Lasky v. Quinlan*, 558 F.2d 1133, 1137 (2d Cir. 1977) ("[Rule 71] which provides in pertinent part that when an order is made in favor of a person who is not a party to the action, he may enforce obedience to the order by the same process as if he were a party, was intended to assure that process be made available to enforce court orders in favor of and against persons who are properly affected by them, even if they are not parties to the action."); *Brennan v. Nassau County*, 352 F.3d 60, 65 (2d Cir. 2003) ("[U]nder Fed. R. Civ. P. 71, '[w]hen an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party,' for example, by a motion to compel.").

its belated termination notice remedied its violation of the 1990 Order,[10] and Plaintiffs respectfully submit that this Court should do so again.

### III.    This Court has the Power to Nullify the Signatures Binding the Corp to the D.C. Agreement.

This Court has the authority to nullify the signatures binding the Corps to the D.C. agreement as a remedial sanction for its contempt.  Apparently believing that it has the ability to violate this Court's orders with impunity, the Corps takes the remarkable position that this Court is powerless to redress its violation of the 1990 Order.  *See* Federal Defendants' Opposition at p. 12 ("[T]he Corps' decision to sign the Settlement Agreement is just such an isolated act that cannot be redressed by the type of coercive order appropriate to civil contempt.").  The Corps' position, of course, completely ignores this Court's power to invoke a sanction that provides Plaintiffs with full remedial relief for the violation of the 1990 Order.  As discussed in greater detail in Plaintiffs' Motion, this Court enjoys "'wide discretion to fashion an equitable remedy for [civil] contempt that is appropriate to the circumstances.'"  *U.S. v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999) (quoting *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987)) (alteration added in *City of Miami*).  "The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief."  *McComb v.*

---

[10] While the Corps has given a belated notice of termination, it still has not complied with its obligations under the 1990 Order to fully respond to outstanding discovery requests.  *See* Doc. 267 (Motion to Compel Production of Documents and Re-instate the Terms of Paragraph 2 of the Joint Motion to Stay Proceedings).  For example, the Corps has failed to fully comply with its discovery obligations by: (i) improperly limiting their document production to documents kept at the Corps' Mobile District office; (ii) failing to produce certain electronic mail files; (iii) failing to produce responsive documents dated after September 14, 1990; (iv) failing to produce any documents relating to weekly meetings and communications among the Corps, ARC and power entities in the ACF basin relating to Buford Dam; and (v) failing to produce correspondence and communication between the Corps and the Southeastern Power Administration relating to the federal reservoirs at issue in the ACF and ACT River Basins.  *See id.*

*Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949). *See also City of Miami*, 195 F.3d at 1298 ("[A] court's civil contempt power is measured solely by the 'requirements of full remedial relief.'") (quoting *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991)).[11]

Georgia and ARC concede that this Court's civil contempt power includes the power to fashion a remedial sanction. They contend, however, as does the Corps, that the remedy sought by Plaintiffs is punitive and not remedial. In doing so, they attempt to recast the sanction sought by Plaintiffs as a complete nullification of the D.C. agreement. The remedy sought by Plaintiffs, however, is not so drastic. Plaintiffs are asking this Court to nullify the signatures binding the Corps to the settlement agreement and to nullify the Corps' commitment to comply with the terms and obligations contained within the D.C. agreement. Alabama and Florida do not ask that the entire agreement be nullified, so any obligations arising under the agreement between parties other than the Corps would not be affected in any way.

Contrary to the suggestion by the Corps, Georgia, and ARC, the relief requested by Plaintiffs is not the equivalent of asking the Court to enter an Order that forever precludes the Corps from entering into future contracts.[12] To the contrary, nothing would prevent the Corps

---

[11] No party takes issue with Plaintiffs' claim that this Court's inherent authority provides it with an alternative basis for the imposition of the sanction sought by Plaintiffs. Rather than restate Plaintiffs' argument in that regard, Plaintiffs refer the Court to paragraphs 13-16 of Plaintiffs' Motion.

[12] While seemingly disagreeing with every prior finding and conclusion of this Court, the Corps, Georgia, and ARC attempt to latch on to one prior decision of this Court to suggest that the relief sought by Plaintiffs has already been denied by this Court. Although this Court did previously choose not to enter an order voiding the D.C. agreement, *see* Doc. 192, at p. 11, after the Court denied this relief, this Court specifically noted that in the event the injunction was lifted, the Court would need to take up the matter of the appropriate sanction for the Corps' violation of the 1990 Order. *See* Transcript, September 29, 2004, at p. 72 (("If I decide not to continue the

from executing the same agreement again as soon as all of the termination obligations and time periods under the 1990 Order have been satisfied.  Once the Corps is in full compliance with the 1990 Order, it would be free to enter into any future contract it wishes as long as such contract complied with applicable law.  Whether or not the political realities would permit the Corps to re-execute the settlement agreement (or execute any other agreement) has no relevance to the sanction this Court imposes on the Corps.

Alabama and Florida are merely seeking a carefully tailored remedy from the Court that will restore the parties to the position they would have held had the Corps complied with the 1990 Order.  *See City of Miami*, 195 F.3d at 1299 ("The clear purpose of make-whole relief in the face of unlawful discrimination, whether in the Title VII or civil contempt context, is to recreate the conditions and relationships that would have been had there been no unlawful discrimination.") (quoting *International Brotherhood of Teamsters v. U.S.*, 431 U.S. 324, 372 (1977)) (internal quotation marks omitted).  *See also Colon v. U.S.*, 576 F.2d 1, 4-5 (1st Cir. 1978) ("Civil contempt exists to recompense a private party for a loss occasioned by the failure of another to comply with a court order. . . .  It is aimed at restoring the parties to the positions they would have held had the order been obeyed.").[13]

---

injunction, and I am not saying that I am leaning that way, but I want to explore all options while I have you here, what then is the proper penalty for the violation of the 1990 Order?").

[13] In a footnote, the Corps argues that the motion is barred by laches.  The Corps' attempt to rely on the doctrine of laches is remarkable in light of the fact that the Corps also contends that this Court has already considered and rejected the relief sought by Alabama and Florida.  As noted in Plaintiffs' Motion, Alabama and Florida have previously pointed to this Court's civil contempt power as a basis for a remedy for the Corps' misconduct.  *See* Plaintiffs' Motion, at n.7.  *See also* Doc. 181, at p. 2 (Georgia's Brief in Opposition to Renewed Motion for TRO) (stating that Alabama had made "repeated efforts to hold the United States in contempt of this Court).  Moreover, there has been no delay resulting in undue prejudice to the Corps.  To the contrary, Plaintiffs have been diligent in seeking relief for the Corps' violation of the 1990 Order.  After learning of the Corps' violation, Plaintiffs sought relief from this Court, and beginning in October 2003, pursuant to this Court's Order, an injunction prevented the implementation of the

The Corps, Georgia, and ARC attempt to use their mischaracterization of the relief sought by Plaintiffs to erroneously suggest that the relief would be inconsistent with the Eleventh Circuit's opinion in *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117 (11th Cir. 2005). Contrary to their argument, the striking of the signatures binding the Corps to the D.C. agreement would not turn the 1990 Order into an "indefinite and interminable bar." *Id.* at 1135, n.24.  Instead, this relief would serve to restore the conditions and relationships that would have existed if the Corps had abided by its obligations under the 1990 Order, leaving the Corps free to pursue any future contract.  While the Corps' pursuit of contracts in the future would still be required to comply with applicable law, the 1990 Order would not stand in its way as "an indefinite and interminable bar."[14] *Id.*

Georgia and ARC make the additional meritless argument that any remedial sanction other than a monetary fine is beyond this Court's power.  That simply is not the case.  *See City of Miami*, 195 F.3d at 1298 ("[A] court's civil contempt power is measured solely by the 'requirements of full remedial relief.'") (quoting *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991)).  The case of *International Union of Operating Engineers, Local 627 v. Arthurs*, 355 F. Supp. 7 (W.D. Okla.), *aff'd*, 480 F.2d 603 (10th Cir. 1973), provides an illustration of a non-monetary sanction imposed against a government agency.  In that case, the United States Bureau of Reclamation violated a court order by prematurely opening bids for a construction project on a dam.  The court held the Bureau in contempt and declared the

---

D.C. agreement.  Soon after that injunction was lifted, Plaintiffs returned to this Court seeking a sanction for the Corps' defiance of the 1990 Order.

[14] As previously noted, Plaintiffs contend that there are still certain discovery obligations under the 1990 Order that the Corps must still complete.  Such discovery obligations are obviously not indefinite or interminable.

bids void as a sanction.[15]   The court stated that "[t]o allow the agency to escape the force of the

order prohibiting the opening of bids would be to invite this and other agencies to exercise their

judgment without resorting to the more acceptable legal procedures." *Arthurs*, 355 F. Supp. at

13; *see id*. ("A court without the power effectually to protect itself against the assaults of the

lawless, or to enforce its orders, judgments, or decrees against the recusant parties before it,

would be a disgrace to the legislation, and a stigma upon the age which invented it.") (quoting *In*

*re Debs*, 158 U.S. 564, 595 (1895)); *cf. Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 518-19

(9th Cir. 1992) (upholding, as a civil contempt sanction, the destruction of airplane parts which

were being sold in violation of a court order).

Notably, in deciding to void the bids as a contempt sanction, the *Arthurs* court

emphasized the particular need for government agencies to follow the law and the judicial

process:

> It is far more important for a government agency to follow the laws passed
> by Congress and to show obedience to the judicial process than it would be in the
> case of a private individual. In the first place, the agency is part of the legal
> system that can survive only through obedience to the law. Furthermore, what an
> agency does affects the lives of many people.  If an agency is allowed to flout the
> law, the people affected will soon lose confidence in that agency or perhaps,
> justifiably, in the total legal system.

*Arthurs*, 355 F. Supp. at 13.  Likewise, Plaintiffs submit that this Court should not permit the

Corps to "flout the law" and ignore the mandates of this Court.

IV.     **This Court's Contempt Power is Not Limited by Other Parties to the D.C.
        Agreement.**

Contrary to the argument of Georgia and ARC, the fact that the remedy sought by

Plaintiffs may affect parties to the D.C. agreement that are not in contempt of the 1990 Order

---

[15] The *Arthurs* decision also included an alternative basis for the court's decision to void the
bids.  355 F. Supp. at 13, 17.

does not preclude this Court from imposing the sanction.  That is not and cannot be the law.

Indeed, taken to its logical conclusion, this argument would create a moral hazard that would

ultimately encourage defiance of court orders.  That is, if a party to a court proceeding decided it

did not like the terms of a court order, that party could easily avoid the mandates of the order

simply by entering into an agreement in contravention of the order with someone who is not

before the court.

The position of Georgia and ARC is untenable, and it has no basis in law.[16]  The case

they cite for the proposition that contempt proceedings may not affect the legal rights of

nonparties does not support that proposition.  *See Martin v. Wilks*, 490 U.S. 755 (1989) (cited in

the Joint Response of Georgia and ARC at p. 18).  Indeed, the *Martin* case did not involve or

even mention contempt proceedings.[17]  Moreover, although Georgia and ARC fail to note it in

their citation, they actually direct the Court to a <u>dissenting opinion</u>, *see* Joint Response of

Georgia and ARC, at p. 18 (citing to p. 773 of *Martin*), and remarkably, even the dissenting

opinion does not state that the rights of third parties cannot be affected by contempt proceedings.

Instead, the dissent merely states that a consent decree cannot impose duties or obligations on a

nonparty to the consent decree.  *Id*. at 773.

The fact that the agreement includes signatories in addition to the Corps does not limit

this Court's ability to remedy the Corps' misconduct.  Those signatories entered into an

agreement with an entity that was specifically prohibited from executing that agreement.  It is

---

[16] Moreover, their position seems particularly odd in light of the fact that the Joint Motion to Stay, which the Corps helped draft, includes an express provision that forbids contracts with third parties, the same third parties who would be affected by the striking of the signatures on behalf of the Corps.  This relief was appropriate in 1990, and it is no less appropriate now that the Corps has violated the directives of this Court.

[17] *See Martin*, 490 U.S. at 762-63 (rejecting the impermissible collateral attack doctrine and holding nonparties to two consent decrees could challenge them because they were affected by the consent decrees).

black letter law that a party assumes the risk that the party with whom it contracts is not competent to enter into that contract.  *Cf. Davis v. Police Jury of the Parish of Concordia*, 50 U.S. 280, 287 (1850) (if parties do not have the capacity to make a contract, "nothing can be claimed under it"); *Accurate Constr. Co. v. Washington*, 378 A.2d 681, 684 (D.C. 1977) (holding contracts executed by construction company whose corporate charter was revoked at the time of contracting were void; "the corporation lacked the capacity to contract when it did"); *Complete Concepts, Ltd. v. General Handbag Corp.*, 880 F.2d 382, 394 (11th Cir. 1989) ("A valid contract requires both capacity or ability to enter into a contract, and mutual assent of the parties to the contract's terms.") (applying Georgia law); *Hurwitz v. Barr*, 193 A.2d 360, 360 (D.C. 1963) ("The law renders an infant's contracts unenforceable . . . ."); *Mutual Life Ins. Co. of New York v. Schiavone*, 71 F.2d 980, 981 (D.C. Cir. 1934) (stating the law of the District of Columbia views an infant's contracts void, if prejudicial on their face, and otherwise voidable).  Having contracted with a party not legally permitted to enter into the D.C. agreement, those other signatories cannot now claim foul when that other party's commitment to the agreement is declared void.

## Conclusion

For the reasons stated above and in their motion, Alabama and Florida respectfully request that this Court issue an Order requiring the Corps to show cause why this Court should not invoke its civil contempt power as well as the Court's inherent power and issue an Order that nullifies the signatures obligating the Corps to the D.C. agreement as well as the Corps' commitment to comply with any terms and obligations contained within the D.C. agreement.

/s/ Matthew H. Lembke

One of the Attorneys for
the State of Alabama

**ON BEHALF OF:**

| *ATTORNEYS FOR THE STATE OF ALABAMA* | *ATTORNEYS FOR THE STATE OF FLORIDA* |
|---|---|
| ATTORNEY GENERAL'S OFFICE OF THE STATE OF ALABAMA<br>R. Craig Kneisel<br>William D. Little, III<br>11 South Union Street<br>Montgomery, AL  36130 | HOGAN & HARTSON, LLP<br>James T. Banks<br>Parker D. Thomson<br>555 13th Street, N.W.<br>Washington, D.C.  20004 |
| LIGHTFOOT, FRANKLIN & WHITE, LLC<br>Warren B. Lightfoot<br>William S. Cox, III<br>W. Larkin Radney, IV<br>Nikaa B. Jordan<br>400 10th Street North<br>Birmingham, AL  35203 | OFFICE OF THE ATTORNEY GENERAL<br>Charles J. Crist, Jr.<br>Attorney General<br>Christopher M. Kise<br>Solicitor General<br>The Capitol, Suite PL-01<br>Tallahassee, FL  32399 |
| BRADLEY ARANT ROSE & WHITE, LLP<br>Matthew H. Lembke<br>Joel M. Kuehnert<br>1819 5th Avenue North<br>Birmingham, AL  35203 | CAMPBELL, WALLER & POER, LLC<br>Caroline Smith Gidiere<br>Suite 450<br>2100-A Southbridge Parkway<br>Birmingham, AL   35209 |
| | FENNEMORE CRAIG<br>Lauren James Caster<br>Donald G. Blankenau<br>303 North Central Avenue, Suite 2600<br>Phoenix, AZ  85012 |

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of April, 2006, a copy of the foregoing was served upon counsel of record for all parties to this proceeding by electronic means or by placing a copy thereof in the United States Mail, first-class postage thereon prepaid and properly addressed as follows:

**Attorneys for Federal Defendants**

Ruth Ann Storey
Robin N. Michael
Anthony P. Hoang
Charles W. Findlay, III
US DEPARTMENT OF JUSTICE, ENVIRONMENT &
        NATURAL RESOURCES
General Litigation Section
Ben Franklin Station
PO Box 663
Washington, DC 20044-0663

Sharon D. Simmons
Alice H. Martin
John C. Bell
US ATTORNEY'S OFFICE
1801 4th Avenue North
Birmingham, AL 35203-2101

Joseph A. Gonzales
Adrienne A. Allen
Deborah Shoemake
US ARMY CORPS OF ENGINEERS
District Counsel
109 St Joseph Street
PO Box 2288
Mobile, AL 36628-0001

**Attorneys for Intervenor-Plaintiff the State of Florida**

James T. Banks
HOGAN & HARTSON LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004-1109

Lauren J. Caster
Thomas R Wilmoth
Donald G Blankenau
FENNEMORE CRAIG PC
1221 North Street, Suite 801
Lincoln, NE 68508

Caroline Smith Gidiere
Charles W. Reed, Jr.
Andrew P. Campbell
CAMPBELL WALLER & POER LLC
2100-A Southbridge Parkway, Suite 450
Birmingham, AL 35209

Christopher M. Kise
Jonathan A. Glogau
FLORIDA ATTORNEY GENERAL'S OFFICE
Department of Legal Affairs
P.L.-01, The Capitol

Parker D. Thomson
HOGAN & HARTSON LLP
1111 Bricknell Avenue, Suite 1900
Miami, FL 33131

**Attorneys for Intervenor-Defendant The State of Georgia**

Thurbert E. Baker
Isaac Byrd
Robert S. Bomar
GEORGIA STATE ATTORNEY GENERAL'S OFFICE
State Judicial Building, Suite 132
40 Capitol Square, SW
Atlanta, GA 30334

Clay C. Long
R. Todd Silliman
Bruce P. Brown
MCKENNA LONG & ALDRIDGE LLP
One Peachtree Center, Suite 5300
303 Peachtree Street
Atlanta, GA 30308

William N. Clark
REDDEN MILLS & CLARK
The Financial Center, Suite 940
505 20th Street, North
Birmingham, AL 35203


**Attorneys for Intervenor Atlanta Regional Commission**

Eddie Leitman
Lynne Stephens O'Neal
Christopher R. Hood
LEITMAN SIEGAL & PAYNE, PC
Land Title Building, Suite 400
600 North 20th Street
Birmingham, AL 35203-2601

Patricia T. Barmeyer
Lewis B. Jones
KING & SPALDING
191 Peachtree Street, NE, Suite 4900
Atlanta, GA 30303-1763


**Attorneys for Intervenor Gwinnett County**

William M. Droze
Gregory W. Blount
David Montgomery Moore
TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street, NE, Suite 5200
Atlanta, GA 30308-2216


**Attorneys for Intervenor-Plaintiff Alabama Power Company**

Edward S. Allen
C. Grady Moore, III
Spencer M. Taylor
BALCH & BINGHAM LLP
PO Box 306
Birmingham, AL 35201-0306

**Attorneys for Intervenor-Plaintiff Montgomery Water Works and Sanitary Sewer**

Charlanna Spencer
Chad E. Stewart
Robert Brian Tipton
SASSER LITTLETON & STIDHAM PC
PO Drawer 4539
Montgomery, AL 36103-4539

**Attorneys for Intervenor-Defendant Lake Lanier Association**

Paul E. Andrew
Seven Lumpkin Street
Lawrenceville, GA 30045

Clyde Y. Morris, Jr
3000 Brierfield Lake
Alpharetta, GA 30004

  _/s/ Matthew H. Lembke_____
Of Counsel